IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COMPONENTS FOR INDUSTRY, AND OTHERS, INC., <br><br> Plaintiff, <br><br> v. <br><br> AUTO KABEL NORTH AMERICA, INC., <br><br> Defendant. | Case No. 19-cv-7152 <br><br> Judge Robert M. Dow, Jr. |

**MEMORANDUM OPINION AND ORDER**

For the reasons set forth below, Defendant's motion to dismiss [10] is denied, and Plaintiff's motion to strike [19] is denied as moot. The parties are directed to file a joint status report no later than August 21, 2020, in which they (a) set out a proposed discovery plan and (b) indicate whether they have mutual interest at this time in a referral to the Magistrate Judge for an early settlement conference.

**I.     Background**

For the purpose of resolving this motion to dismiss, the details of the underlying dispute are not all that important. At some point Plaintiff Components for Industry, and Others, Inc. ("Plaintiff") and Defendant Auto Kabel North America, Inc. ("Defendant") entered into a contract. Defendant agreed to purchase specified quantities of various items for negotiated bulk prices per item. These terms were memorialized in Purchase Orders that Defendant sent to Plaintiff. Plaintiff claims that Defendant then tried to reduce the quantity, breaching the contract.

With the exception of when, exactly the contract was formed, these details are neither here nor there at the moment, and even that temporal issue need not be resolved on this motion. Defendant argues that its Purchase Orders pertaining to these sales, which both parties agree

"memorialize" the contract terms, incorporate a separate document which in turn provides for exclusive venue in Europe and in any event requires arbitration in Germany. The relevant language in the Purchase Order is as follows, with the second two lines set in a typewriter-style serif font:

> We order acc. to the last version of our purchasing conditions, see:
> TT   AUTOKABEL CO    E KO TAKT E KAU   T L
> TT   AUTOKABEL CO    E  CO  T[illegible]CT  U C  AS      T L
> We order acc. to the last version of our purchasing conditions, see:
> TT       AUTOKABEL CO     E KO TAKT E KAU       T L
> TT       AUTOKABEL CO   E CO TCT  UC AS         T L

Defendant claims that this language incorporates their General Purchasing Conditions ("GPCs").[1] The GPCs define "AK" to be one of several European Auto Kabel companies that are not parties to the contract or this litigation, and explains that the "GPC shall apply in any business relationship * * * between the Supplier [here, Plaintiff] * * * and all AK affiliated companies." [11-1 at 21.] The venue and arbitration provisions respectively provide:

> Exclusive venue shall be at the District Court competent for the residence of AK. AK shall be entitled to open litigations at each Court competent fort he [sic] Supplier. The contractual language is German. The place of performance shall be the location determined by AK or the affiliated company of AK.

> On request of AK the supplier shall agree to an arbitration agreement according to the rules of the Deutschen Institution fur Schiedsgerichtsbarkeit e.V. (DIS) excluding any other recourse to the courts if AK believes that the arbitration and the execution of awards of a foreign arbitration court seems to be more appropriate or effective or easier compared to the rules of a foreign court. The number of arbitrators shall be three. [URL omitted] In the arbitration the material German Law shall apply exclusively.

Defendant has moved pursuant to Rule 12(b)(3) to dismiss for improper venue, arguing that this dispute must be arbitrated in Germany or litigated in a European District Court. Plaintiff has also moved to strike Defendant's reply brief.

---

[1] Defendant claims that the typewritten lines were hyperlinked to an external URL that contained the GPCs. Plaintiff contests that fact. The Court need not resolve this issue because the same result obtains either way.

2

II.   **Legal Standard**

The present dispute must be resolved using federal procedural rules and state contract law. Federal Rule of Civil Procedure 12(b)(3) allows a defendant to seek dismissal for "improper venue." The plaintiff bears the burden of establishing that the chosen venue is proper. See *Int'l Travelers Cheque Co. v. BankAmerica Corp.*, 660 F.2d 215, 222 (7th Cir. 1981) (citing *Grantham v. Challenge–Cook Bros., Inc.*, 420 F.2d 1182, 1184 (7th Cir. 1970)). A court deciding a Rule 12(b)(3) motion must take the allegations in the complaint as true, unless contradicted by the defendant's affidavits. *Nagel v. ADM Investor Servs., Inc.*, 995 F. Supp. 837, 843 (N.D. Ill. 1998) see also *Jackson v. Payday Financial, LLC*, 764 F.3d 765, 773 (7th Cir. 2014). The court also may examine facts outside the complaint to determine if venue is proper. *Faulkenberg v. CB Tax Franchise Sys.*, LP, 637 F.3d 801, 810 (7th Cir. 2011) ("when ruling on a motion to dismiss for improper venue, [a] district court is not obligated to limit its consideration to the pleadings [or to] convert the motion to one for summary judgment if the parties submit evidence outside the pleadings."). Under Illinois law, "[t]he party seeking to enforce the terms of an allegedly incorporated document 'must show ... an intention to incorporate the document and make it a part of the contract.'" *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 736–37 (7th Cir. 2002) (quoting *Arneson v. Board of Trustees, McKendree College*, 210 Ill.App.3d 844, 849–50 (5th Dist. 1991)).

III.   **Analysis**

Plaintiff claims that the Purchase Order language that supposedly references the GPCs is too vague to incorporate an external document under Illinois law. In the alternative, Plaintiff argues that (a) the purchase orders were not actually part of the contract and were instead a counteroffer that triggered the battle-of-the-forms provision of the Uniform Commercial Code, 810 ILCS 5/2-207, which, in turn would require throwing out the forum selection clause; (b) the GPCs do not

apply to this contract because they only apply to Europe-based "AK" entities and not Defendant; and (c) it would be against public policy to force these American-based companies to schlep all the way to Germany to arbitrate a contract entered into in the United States by two American companies against the backdrop of the Uniform Commercial Code. Defendant counters that the incorporation language regarding the GPC was clear; the battle-of-the-forms provision does not apply because purchase orders were offers (not counteroffers); the GPCs apply to AK affiliates such as Defendant; and courts routinely enforce arbitration provisions that require international travel or teleconferencing. Because Plaintiff's first argument about incorporation carries the day, the Court need not address these alternatives.[2]

Preliminarily, both parties seemingly agree that Illinois law should apply to the questions of contract formation and interpretation. See, *e.g.*, [17 at 7 (citing a federal court's application of Illinois law as controlling in this case)]; [18 at 3 (same)]; see also *Desimone v. Danaher Corporation*, 2018 WL 4181483, at *4 n.3 (applying Illinois law regarding contract formation to determine whether Michigan choice-of-law provision was enforceable). In any event, the Court applies Illinois law in the absence of an actual dispute over the substantive law. See *NAR Business Park, LLC v. Ozark Automotive Distributors, LLC*, 430 F. Supp. 3d 443, 451 n.8 (N.D. Ill. 2019) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, (1941); *Bridgeview Health Care Center, Ltd. v. State Farm Fire & Cas. Co.*, 381 Ill. Dec. 493, 10 N.E.3d 902, 909 (2014)).

In Illinois, "[t]he primary objective in construing a contract is to give effect to the intent of the parties." *Gallagher v. Lenart*, 226 Ill.2d 208, 232 (2007). The language of a contract provides the best indication of that intent. *Id.* (citation omitted); see also *Right Field Rooftops, LLC v. Chi.*

---

[2] Because determining what the language in the purchase orders actually means is a threshold question, the Court need not actually determine *when* the contract was formed, and whether the Purchase Orders are accordingly counteroffers subject to the battle-of-the-forms or offers that were accepted when Plaintiff performed.

4

*Cubs Baseball Club, LLC*, 870 F.3d 682, 690 (7th Cir. 2017) (applying Illinois contract law) ("A court must initially look to the language of a contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent."). If the contract's language is facially unambiguous, its words "must be given their plain, ordinary, and popular meaning." *Central Illinois Light Co. v. Home Ins. Co.*, 213 Ill.2d 141, 154 (2004). If the contract's language is susceptible of more than one meaning, it is ambiguous and the court can consider extrinsic evidence to determine the parties' intent. *Right Field Rooftops*, 870 F.3d at 690.

Relatedly, "a document is incorporated by reference into the parties' contract only if the parties intended its incorporation." *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 736 (7th Cir. 2002). "Such intent to incorporate must 'be clear and specific.'" *Dochak v. Polskie Linie Lotnicze LOT S.A.*, 189 F. Supp. 3d 798, 802 (N.D. Ill. 2016) (quoting *188 LLC*, 300 F.3d at 736). Accordingly, courts applying Illinois law have concluded that the "[m]ere reference to another contract or document is not sufficient to incorporate its terms into a contract." *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 666 (7th Cir. 2002) (holding that references to an Employment Agreement and clause stating, "This Agreement together with the other agreements and documents to be delivered pursuant to this Agreement constitute the entire agreement between the Parties" did not evince an intent to *incorporate* the "other agreements and documents"); see also *Leszanczuk v. Carrington Mortgage Services, LLC*, 2020 WL 1445612, at *4 (N.D. Ill. Mar. 25, 2020) (multiple vague allusions to U.S. Department of Housing and Urban Development ("HUD") regulations and one specific reference to one regulation do not collectively evince intent to incorporate all HUD regulations); *Dochak*, 189 F. Supp. 3d at 803 (holding that contractual language providing that "passengers are entitled to rights provided for in the Regulation (EC) No 261/2004 of the European Parliament" was akin to a notice provision, and did not evince an intent

to incorporate those regulations); *Mandel Metals, Inc. v. Walker Group Holdings*, 2015 WL 3962005, at *4–5 (N.D. Ill. June 26, 2015) (holding that "provision stating that each Purchase Order 'must be confirmed within 24 hours of receipt' per [defendant's] 'Terms and Conditions which can be found at: http:// www.walkergh.com/docs/index.html'" was silent as to whether the entire Terms and Conditions should be fully incorporated into the contract); *Hartford Fire Ins. Co. v. Henry Bros. Const. Management Services, LLC*, 2011 WL 3563138, at *6 (N.D. Ill. Aug. 10, 2011) (provision explaining that a contract "is intended to be used in conjunction with the 1992 edition [ ] of AIA Document * * * A201/CMa" did not clearly and specifically incorporate the A201/CMa by reference); *Hayes v. M & T Mortg. Corp.*, 389 Ill. App. 3d 388, 390 (1st Dist. 2009) (affirming dismissal of breach of contract actions where provisions "reflect only an acknowledgment that the lender's foreclosure rights under the mortgage are subordinate to applicable HUD regulation; they do not demonstrate an intent to make each loan regulation enforceable under the parties' agreement").

Here, Defendant's motion fails because the relevant contractual provision was not "clear and specific" in at least two respects. First, the language of incorporation was not "the kind of 'clear and specific' language that Illinois law requires to incorporate another document into a contract." *Hartford Fire Ins.*, 2011 WL 3563138, at *7 (explaining that "'which is incorporated herein by reference'" is "precisely" the kind of language that clears the hurdle). The language at issue here, "we order acc. to the last version of our purchasing conditions," does not purport to bind the supplier in any way, let alone announce that the contract fully incorporates a separate document. See *Dochak*, 189 F. Supp. 3d at 803; *Mandel Metals*, 2015 WL 3962005, at *4–5; *Hartford Fire*, 2011 WL 3563138, at *6. And, although the most obvious word to fill in for "acc." is probably "according," this language is far from "clear" as required by the acc.[umulated] Illinois

6

precedents to which this court must acc.[ede]. This is not to say that shorthand is never acc.[eptable], but here, where the language itself is indeterminate, further ambiguities erode any confidence that the parties were in acc.[ord] about the GPCs. See *Dugan v. Smerwick Sewage Co.*, 142 F.3d 398, 404 (7th Cir. 1998) (observing that parties may agree "to the idiosyncratic connotation they attribute to the otherwise plain language of the contract").

Second, it is neither "clear" nor "specific" which documents are to be incorporated by reference. It goes without saying that "TT AUTOKABEL CO E KO TAKT E KAU TL" and "TT AUTOKABEL CO E CO T[illegible]CT UC AS TL" are gibberish. And the GPCs that Defendant has attached to its motion do not contain any of this language as, for example, a document title. Even if the "earlier version" of the purchasing conditions were a clear invocation of the GPCs, this seemingly random amalgamation of consonants and vowels muddies any message by seemingly referring to different documents. The Court, likewise, need not worry about the factual issue of whether the organic versions of the purchase orders were hyperlinked, because it is not clear and specific that these seemingly type-written letters, when clicked with a cursor, would take a digital reader to an external website; and in any event contract interpretation involves looking at the words parties use to express their intent, not hidden formatting choices. See *Right Field Rooftops*, 870 F.3d at 690. Perhaps a reasonable person would investigate or question these cryptic lines, but that is not the standard under Illinois law for determining whether a contract incorporates an external document.[3]

---

[3] Admittedly, this analysis sits poorly with *Paper Exp., Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 755 (7th Cir. 1992), which did not apply the "clear and specific" standard and instead construed the contract to avoid surplusage. To the extent that this approach conflicts with subsequent developments in Illinois contract law and Seventh Circuit interpretations thereof it must be abandoned. See *188 LLC*, 300 F.3d at 736 (quoting Illinois state court opinions that postdated *Paper Exp.* in its application of the "clear and specific" standard). Even assuming, arguendo, that the court must assign some meaning to these ambiguous provisions (yes, they are ambiguous), however, Illinois law would require strictly construing the provisions against the party that drafted them (here, Defendant). *Turner Const. Co. v. Midwest Curtainwalls, Inc.*, 187

Defendant's citation to *Plymouth Tube Company v. Pilepro Steel, LP*, 2017 WL 4707454, at *6 (N.D. Ill. Oct. 19, 2017), misses the mark. The court's analysis of the contract language there is worth quoting in full:

> The order acknowledgments clearly state that they "incorporate by reference, as if fully set forth [therein], the Plymouth Tube Company Order Acknowledgment Terms and Conditions as stated and available on [Plaintiff's] web site www.plymouth.com[.]" The order acknowledgments also provide that the applicable website terms and conditions are "those in effect as reflected on [Plaintiff's] web site as of the date of [the] order acknowledgment."

*Id.* at *7. Thus, in *Plymouth*, the contract clearly "incorporate[d] by reference" a specific document, and provided a written-out hyperlink. Here, the Purchase Orders (maybe) said that Defendants would purchase according to their own (something) and maybe included a hidden hyperlink. These are clearly different, and Illinois law recognizes as much.[4]

Because the Court concludes that the GPCs are not incorporated by reference, Defendant's other cases concerning litigants' (purported) unawareness of explicit contractual terms are inapposite. As explained above, the proper standard for determining whether an external document is incorporated into a contract is whether the contract clearly and specifically incorporates it, not whether there are simply some words on a page that maybe mean that some other document is maybe in play in some capacity. Likewise, Defendant's argument that Plaintiff's executives were aware of the GPCs in the months following Defendant's purported breach has nothing to say about

---

Ill. App. 3d 417, 421 (1st Dist. 1989) ("Moreover, legal documents which are ambiguous are strictly construed against the party who prepared them.") Thus, the best reading that strictly construes the Purchase Order against Defendant and avoids surplusage is that this was simply a notice provision, providing context for how Defendant normally conducts its business, but not binding Plaintiff to those terms. See *Dochak*, 189 F. Supp. 3d at 803; *Hartford Fire Ins.*, 2011 WL 3563138, at *6.

[4] To be sure, Defendant points out that other purchase orders (not at issue here) did include written out hyperlinks. Even assuming, arguendo, that this is relevant, this argument fails because the incorporation language was too unspecific to begin with. Moreover, it is not clear how the fact that Defendant replaced the URLs with seemingly random letters would clue anyone in to the fact that, in fact, the URLs are still controlling.

whether the actual binding contract clearly incorporates the GPCs by reference. Obviously, however, Plaintiff will now be unable to advance any argument under the GPCs.

Finally, the Court notes that it is far from clear that dismissal would be warranted even if the GPCs applied. The arbitration provision is particularly problematic. Preliminarily, it may be an agreement to agree, which Defendant concedes would be unenforceable under Illinois law. See [18 at 9 (citing *In re Marriage of Madan and Ray*, 2016 IL App (1st) 153386-U at *4)]. It also only applies if AK requests arbitration after making a determination as to what is most convenient, but as explained above AK is not a party to this contract. Perhaps parties to a contract may allow third parties to swoop in and demand arbitration based on its own convenience, but neither party has briefed that issue or how that standard should be applied in practice. And the provision that "venue shall be at the District Court competent for the residence of AK" is confusingly worded at best. Furthermore, what is the Court to make of the fact that this section dictates that the "contractual language is German," given that both the Purchase Orders and GPCs are in English? Mercifully, the Court need not consider these paradoxes given that the GPCs are not incorporated into the contract. Finally, the Court denies Plaintiff's motion to strike as moot.

**IV.    Conclusion**

For the reasons set forth above, Defendant's motion to dismiss [10] is denied, and Plaintiff's motion to strike [19] is denied as moot. The parties are directed to file a joint status report no later than August 21, 2020, in which they (a) set out a proposed discovery plan and (b) indicate whether they have mutual interest at this time in a referral to the Magistrate Judge for an early settlement conference.

Dated:  August 5, 2020

_____
Robert M. Dow, Jr.
United States District Judge